United States District Court
Southern District of Texas
FILED

NOV 1 3 2001

Michael N. Milby
Clerk of Court

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

| | | |
|---|---|---|
| SAGE CAPITAL CORPORATION f/k/a SAFECO CREDIT CO., INC., Plaintiff | § § § § | |
| vs. | § § | CIVIL ACTION NO. **B -01 - 19** |
| SWEEZY CONSTRUCTION, INC., KENT M. SWEEZY and PAULINE SWEEZY, Defendants | § § § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND
## APPLICATION FOR WRIT OF SEQUESTRATION

TO THE HONORABLE JUDGE OF SAID COURT:

SAGE CAPITAL CORPORATION f/k/a SAFECO CREDIT CO., INC., (*hereinafter*

*"Sage"*), a corporation organized under the laws of the State of Washington, and qualified

to do business in the State of Texas, hereinafter called Plaintiff, file this its Original

Complaint and Application for Writ of Sequestration complaining of SWEEZY

CONSTRUCTION, INC., (*hereinafter "Sweezy"*) KENT M. SWEEZY (*hereinafter K.

Sweezy"*) and PAULINE SWEEZY (*hereinafter "P. Sweezy"*), who may be served with

citation at the following addresses:

**Sweezy Construction, Inc.**
**By and Through Its Registered Agent for Service**
**Juan A. Magallanes**
**1713 Boca Chica Blvd.**
**Brownsville, Cameron County, Texas 78521.**

Kent M. Sweezy, Individually
604 Parkview Circle
Harlingen, Cameron County, Texas 78550.

Pauline Sweezy
604 Parkview Circle
Harlingen, Cameron County, Texas 78550.

and for cause of action, Plaintiff would respectfully show the Court as follows:

## JURISDICTION AND VENUE

1.      SAGE is diverse from each Defendant, and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.   Venue is proper in the United States District Court for the Southern District of Texas, Brownsville Division, pursuant to 28 U.S.C. §1397 and 124(b)(7), because one or more of the Defendants reside in the Judicial District of Brownsville.

## EQUIPMENT LEASE

2.      On or about June 14, 2001, Plaintiff and Defendant entered into a written Equipment Lease, by the terms of which Plaintiff leased to Defendant: (i) One (1) CMI Model RS 325 soil reclaimer/stabilizer, S/N 270100114 equipped with Cummins 330 HP diesel engine, 4WD, 4 wheel steering, 200 GPM water spray system, and 6' reclamation/housing assembly; (ii) One (1) CMI Model RS 325 soil reclaimer/stabilizer, S/N 560121 equipped with Cummins 330 HP diesel engine, 4WD, 4 wheel steering, 200 GPM water spray system, and 6' reclamation/housing assembly, together with all present and future attachments, accessories, additions, parts and supplies, and any replacements thereof, installed in, affixed to or used in connection with said property and all proceeds of said

---

property *(the "Leased Equipment")* for a term of thirty-six (36) months, for which Defendant promised to pay an agreed monthly rental of Ten Thousand Four Hundred Eighty-Nine and 26/100 ($10,489.26) per month, plus applicable taxes.   A true copy of the Equipment Lease is attached hereto, incorporated herein for all purposes, and marked as *Exhibit "A"*.

3.   The Equipment Lease provides that, if Defendant Sweezy failed to pay any installment of rent within ten (10) days after the same is due and payable, Plaintiff shall have the right to declare the entire amount of rent therein provided, to be immediately due and payable, without notice or demand, notice of default, notice of intent to accelerate and notice of acceleration being expressly waived, and recover possession of the Leased Equipment. The Equipment Lease further provides that Plaintiff is entitled to recover from Defendant all expenses which Plaintiff may incur in connection with the enforcement of any of its rights thereunder, including attorney's fees.   The Equipment Lease further provides that the Plaintiff is not the manufacturer of the Leased Equipment nor the manufacturer's agent, that the Lease Equipment was selected by Defendant and not by Plaintiff, that Plaintiff has made and makes no representations or warranties concerning the merchantability of the Leased Equipment or its fitness for any use to which it may be put by Defendant, and that Defendant shall keep the Leased Equipment in good repair and furnish necessary service and repair at Defendant's expense.

## DEFAULT

4.      Plaintiff fully performed all of its duties and obligations under the terms of the Equipment Lease.   Defendant  received  possession of the Leased Equipment on or about June 14, 2001, as evidenced by the written Delivery/Acceptance Certificate, executed by Defendant, a true copy of which is attached hereto, incorporated herein for all purposes, and marked *Exhibit "B"*. The Leased Equipment thereafter remained in Defendant's possession and remains in Defendant's possession as of the date of the filing of this petition. All conditions precedent have been performed or have occurred.

5.      Defendant immediately defaulted with the rental payment which fell due on July 1, 2001  and has made no other payments to Plaintiff.  Thereafter, Plaintiff exercised its option to accelerate the unpaid balance of the indebtedness due on the Equipment Lease.

## LIQUIDATED DAMAGES

6.      The Equipment Lease expressly provides that, in the event of default, the Plaintiff is entitled to recover the amount of all past due unpaid rental installments plus the total amount of all rental installments called for the balance of the term of the lease as liquidated damages, and not as penalty. The Equipment Lease further provides that, in the event that the Leased Equipment is returned to Plaintiff, the Plaintiff may sell same and apply the net proceeds to the unpaid balance of the rentals for the remaining unexpired term of the lease. The Leased Equipment has not been returned to Plaintiff, and, under the terms of the lease, Plaintiff is entitled to recover liquidated damages in the amount of $447,967.11  plus interest and fees.

## ACTUAL DAMAGES

7.     In the alternative, Defendant's default has caused Plaintiff actual damages for its out of pocket loss and for loss of the benefit of the bargain.

## ATTORNEYS' FEES

8.     Because of Defendant's default, it has become necessary for Plaintiff to retain the undersigned attorneys to file this suit on its behalf. Pursuant to the terms of the Equipment Lease, Plaintiff is, therefore, entitled to recover its reasonable attorney's fee. In the alternative, Plaintiff made demand upon Defendant for payment of the claim made the basis of this suit more than 30 days prior to the filing of this suit. Plaintiff is, therefore, entitled to recover a reasonable amount as attorney's fees pursuant to Tex. Civ. Prac. & Rem. Code § 38.001, et seq.

## POSSESSION OF THE EQUIPMENT

9.     The Equipment Lease expressly provides that the Leased Equipment is and shall remain the property of the Plaintiff, and that Defendant has not required any right, title or interest therein. Because of the Defendant's default, Plaintiff is entitled to the immediate possession of the Equipment. Defendant has failed and refused and still fails and refuses to deliver possession of the Leased Equipment to Plaintiff or to allow Plaintiff to take possession thereof, and Plaintiff is entitled to judgment for possession of the Leased Equipment.

## GUARANTEES

10.     Kent M. Sweezy and Pauline Sweezy, Individually guaranteed payment of the amounts due under the Equipment Lease.   Copies of their Guaranties are attached hereto as *Exhibits "C" and "D"* respectively.   Defendants Kent M. Sweezy and Pauline Sweezy are jointly and severally liable for all amounts due to Plaintiff pursuant to the Equipment Lease.

## APPLICATION FOR WRIT OF SEQUESTRATION

11.     SWEEZY has refused to surrender possession of the Collateral when specifically requested to do so.     Plaintiff demanded surrender and delivery of the equipment in writing on August 31, 2001.   A copy of the demand letter is attached hereto as *Exhibit "E"*.     Plaintiff requests issuance of a Writ of Sequestration pursuant to Tex. R. Civ. Pro. 696 and Fed. R. Civ. Pro. 64.

12.     The Collateral is exposed to risk of damage or loss through collision and wear and tear. The Collateral, like all equipment, depreciates in value over time, through use and whether used or not. The Defendant has no other nonexempt property, within the Plaintiff's knowledge, and if the Plaintiff cannot recover the Collateral, it will in all likelihood lose its debt. Furthermore, the Collateral will depreciate in value over time, while the Plaintiff's debt will only increase through the accrual of interest. At the present time the fair market value of the Collateral is less than the total amount of the indebtedness owed against it. Furthermore, the Collateral, like all equipment is mobile property and can easily be moved out of Cameron County by the Defendant. If the Defendant is permitted to retain possession of the Collateral during the pendency of this

suit, there is a significant danger that it will be moved outside of Cameron County and outside of the State of Texas, so as to place it beyond the Plaintiff's reach.    This Application is supported by the Affidavit of Michael Lindig which is attached hereto as *Exhibit "F"*.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays the Court that Defendants be cited to appear and file answer herein, and on final hearing hereof, that the Plaintiff, SAGE CAPITAL, do have and recover of and from the Defendants judgment in the sum of $437,749.85, together with prejudgment and post judgment interest as allowed by law, reasonable attorney's fees, all costs of court, and for possession of the following described equipment:   (i) One (1) CMI Model RS 325 soil reclaimer/stabilizer, S/N 270100114 equipped with Cummins 330 HP diesel engine, 4WD, 4 wheel steering, 200 GPM water spray system, and 6' reclamation/housing assembly; (ii) One (1) CMI Model RS 325 soil reclaimer/stabilizer, S/N 560121 equipped with Cummins 330 HP diesel engine, 4WD, 4 wheel steering, 200 GPM water spray system, and 6' reclamation/housing assembly, together with all present and future attachments, accessories, additions, parts and supplies, and any replacements thereof, installed in, affixed to or used in connection with said property and all proceeds of said property, or in the alternative, for foreclosure of its security interest in said equipment, and that a Writ of Sequestration be issued for the above described Collateral,  and for such other and further relief to which the Plaintiff may show itself to be justly entitled .

Respectfully submitted this  12th  day of November, 2001.

---

OF COUNSEL:

STAPLETON, CURTIS
    & BOSWELL. L.L.P.

Chris Boswell
Attorney in Charge
State Bar No. 02683300
Southern District of Texas
Admissions Id. No. 1256
515 E. Harrison, Suite "A" (78550)
Post Office Box 2644
Harlingen, Texas  78551
Telephone:   (956) 428-9191
Telecopier:   (956) 428-9283



# MASTER LEASE AGREEME

SAFECO

**Name and Address of Lessee**
Sweezy Construction, Inc.
1901 Sweezy Lane
San Benito, Texas 78586
Cameron County

**Name and Address of Lessor**
SAFECO Credit Company, Inc.
Dallas Division
1600 N Collins Blvd  Ste 3000
Richardson, TX 75080-3519

THIS MASTER LEASE AGREEMENT ("Master Lease") is made by and between SAFECO Credit Company  Inc  a Washington corporation ("Lessor") and Sweezy Construction, '
( Lessee )

This Master Lease contains terms and conditions that Lessor and Lessee agree shall be applicable to one or more lease transactions between them  Each transaction to which
Master Lease applies will be evidenced by an Equipment Schedule ("Equipment Schedule") executed by Lessor and Lessee that incorporates the terms and conditions of this Mas
Lease and further sets forth specific terms and conditions of that specific lease transaction  Subject to the terms and conditions of this Master Lease and the terms of the applic
Equipment Schedule  Lessee agrees to lease from Lessor the property described in such Equipment Schedule  together with all parts, additions and attachments incorporated there
(collectively "Equipment")  If the terms of any Equipment Schedule conflict with the terms of this Master Lease  the provisions of the Equipment Schedule shall prevail  Ea
Equipment Schedule shall constitute a complete and separate contractual obligation  independent of all other Equipment Schedules and without any requirement of bei
accompanied by an originally executed copy of this Master Lease  Each Equipment Schedule together with the terms and conditions of this Master Lease shall be referred to as
"Lease"  Only one original of the Equipment Schedule will be executed by the parties and the delivery of the original executed copy of the Equipment Schedule shall be effective
purposes of perfecting by possession a security interest in such Equipment Schedule  Lessee acknowledges with respect to each Lease  that (a) Lessor has not selected
manufactured or supplied the Equipment  (b) Lessee is acquiring the Equipment solely in connection with the Lease  and (c) Lessee has selected the supplier and  before signing u
Lease  Lessee has received a copy of and/or approved the terms of any purchase order or purchase agreement relating to the Equipment

1    Lease Term  The Lease Term shall be the term set forth in the applicable Equipment Schedule  The Lease cannot be canceled or terminated except as expressly provid
herein or in the applicable Equipment Schedule

2    Rent  Lessee shall pay Lessor rent for the Equipment without prior notice or demand in the amounts and at the times specified in the applicable Equipment Schedule  Ea
Lease is a net lease and Lessee s obligation to pay rent and other sums due hereunder is absolute and unconditional and not subject to any abatement  reduction, setoff  defens
counterclaim or recoupment for any reason whatsoever  Rent is payable immediately available U S  funds by delivering the same to Lessor at its home office address, P O  B
34490  Seattle  Washington 98124  or at such other address as Lessor shall hereafter designate in writing to Lessee  and shall be credited upon receipt  Time is of the essence  If a
rent or other payment due under the Lease is not paid in full on the due date or within ten (10) days thereafter  Lessor may collect and Lessee agrees to pay, a late charge equal
10% of the payment due (or the highest charge permitted by law  whichever is less)

3    Covenants of Lessee  Lessee agrees as follows  (a) Lessee will furnish Lessor (i) within one hundred twenty (120) days after the end of each fiscal year of Lessee  a balanc
sheet of Lessee as of the end of such year, and the related earnings statement  prepared on a consistent basis and fairly  accurately and completely stating the financial condition
Lessee as of the end of such year and the results of its operations for the period covered  and (ii) upon Lessor s written request  quarterly or six-month interim statements within six
(60) days after the end of such period  including a balance sheet of Lessee and the related earnings statement  prepared in accordance with the standards stated in (i) above  (i
Lessee promptly will execute and deliver to Lessor such further documents and take such further action as Lessor from time to time reasonably requests to carry out the intent of th
Lease and to establish the rights created in favor of Lessor

4    Representations and Warranties of Lessee  Lessee represents and warrants to Lessor that as of the date of this Master Lease and as of the date of each Lease  (a) Lessee
duly organized  validly existing and in good standing under the laws of each state where Lessee conducts its business and operations  and Lessee has the power and capacity to ente
into the Lease and perform all its obligations thereunder  (b) This Master Lease, the Equipment Schedule(s) and all other documents executed by Lessee in connection with eac
Lease have been duly authorized  executed and delivered by Lessee and constitute valid  legal and binding obligations of Lessee  enforceable in accordance with their terms  except
the extent that the enforcement of the remedies provided therein may be limited by applicable bankruptcy and insolvency laws, (c) Each balance sheet and earnings statemen
delivered to Lessor has been prepared in accordance with Section 3(a) above and since the most recent such balance sheet and earnings statement given to Lessor there has been n
material adverse change, (d) The Equipment will at all times be used for commercial or business purposes

5    Delivery and Acceptance by Lessee  Lessee shall inspect the Equipment and  if it is conforming and otherwise acceptable  Lessee shall execute a Delivery and Acceptanc
Certificate in a form satisfactory to Lessor  whereupon, as between Lessor and Lessee  the Equipment shall be deemed to have been accepted by Lessee for all purposes of th
Lease  Lessor shall not be liable for loss or damage resulting from any failure of or delay in delivery  damage to the Equipment, governmental regulations, strike or embargo  A
expenses incurred in connection with Lessor's purchase of the Equipment (including shipment  delivery  installation and servicing of the Equipment by the manufacturer or supplier o
by any other party) shall be the responsibility of Lessee unless otherwise expressly agreed in the applicable Equipment Schedule  If Lessee shall, for reasonable cause  refuse t
accept delivery of the Equipment  Lessee will have all rights and assume all obligations as purchaser of the Equipment and will indemnify and hold Lessor harmless from and agains
any and all claims of the manufacturer  supplier or any other person relating to the Equipment

6    Marking the Equipment  If instructed by Lessor, Lessee will cause the Equipment to be marked with the name of Lessor

7    Use, Maintenance and Location  Lessee shall permit the Equipment to be used solely within the continental United States in the conduct of its business and in a carefu
manner by qualified personnel and in compliance with applicable federal  state and local laws relating to environmental protection  occupational health and safety and public health and
safety and all applicable operating procedures and insurance policies  At its own expense  Lessee will maintain the Equipment as recommended by the manufacturer and in as goo
operating condition as when delivered to Lessee  ordinary wear and tear alone excepted and will provide all maintenance and service and make all repairs or replacements reasonabl
necessary for such purpose  If any parts or accessories become worn out, lost, destroyed  damaged beyond repair or otherwise permanently rendered unfit for use, Lessee  at its ow
expense  will  within a reasonable time  cause such parts or accessories to be replaced by parts or accessories which are free and clear of all liens  and have a value and utility at leas
equal to the parts or accessories replaced  All equipment  accessories  parts and replacements for  or which are added to or become attached to  the Equipment which are essential t
the operation of the Equipment or which cannot be detached from the Equipment without materially interfering with the operation of the Equipment or adversely affecting its value and
utility  shall immediately become the property of Lessor  and shall be deemed incorporated in the Equipment and subject to the Lease  Lessee shall not make any material alterations
to the Equipment without the  prior  written consent of Lessor  which consent shall not be unreasonably withheld  Lessor shall have the right to inspect the Equipment and a
maintenance records with respect thereto at any reasonable time during normal business hours  Lessee will not change the location of any Equipment as specified in the Equipmen
Schedule without the prior written consent of Lessor  which consent shall not be unreasonably withheld  Lessee shall not attach or incorporate the Equipment into any other item o
equipment in such manner that the Equipment becomes or may be deemed to have become a part of such other item of equipment

8    Disclaimer of Warranties  Lessee acknowledges that Lessor is not the manufacturer  distributor or seller of the Equipment and Lessee has not relied upon any specia
knowledge or skill of Lessor or its agents or employees in selecting the Equipment or the supplier  LESSOR HAS NOT MADE AND DOES NOT MAKE AND EXPRESSLY DISCLAIMS
ANY WARRANTY OR REPRESENTATION  EXPRESS OR IMPLIED  OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR FITNESS FOR USE O
DESIGN OR CONDITION OF THE EQUIPMENT OR THE YEAR OF MANUFACTURE OR THE QUALITY OR CAPACITY OF THE EQUIPMENT OR THE WORKMANSHIP IN THE
EQUIPMENT OR THAT THE EQUIPMENT WILL SATISFY THE REQUIREMENTS OF ANY LAW  SPECIFICATION OR CONTRACT PERTAINING THERETO OR ANY GUARANTY
OR WARRANTY AGAINST PATENT INFRINGEMENT OR LATENT DEFECTS  OR ANY OTHER WARRANTY OR REPRESENTATION WHATSOEVER  All such risks, as between
Lessor and Lessee  are to be borne by Lessee  Lessor is not liable for any direct  indirect  incidental or consequential damage or loss resulting from the installation  operation or use
of the Equipment  Lessee may have rights against the supplier  including warranties  under the contract evidencing Lessor's purchase of the Equipment and Lessee may contact the
supplier for a full description of any such rights  All assignable warranties made by the manufacturer or supplier to Lessor are hereby assigned to Lessee for  the term of the Lease and
Lessee agrees to resolve all such claims directly with the manufacturer or supplier  No such claim shall affect in any manner the unconditional obligation of Lessee to pay Rent as
specified in the Lease

*EXHIBIT "A"*

9.  **Taxes and Assessments**  Lessee shall pay pro  [...]en due or reimburse Lessor for  and hold Lessor harm  (i) all titling  recordation  filing  documentary stamp  other fees, (ii) taxes (other than taxes calculated solely  [...] basis of net income)  including but not limited to sales  [...] personal property taxes  and (iii) assessments and  other charges or withholdings of any nature (together with any penalties  fines or interest thereon) arising at any time relating to the Equipment or the Lease or with respect to  acquisition  ownership  use  operation  leasing  delivery  return or other disposition of the Equipment or upon the rent  whether the same be assessed to Lessor or Lessee  Les  shall report the Equipment for personal property tax purposes  Lessee shall file  any necessary report or return  Any report or return shall show the ownership of the Equipme  Lessor  If Lessee fails to pay any such charges when due, except tax or assessments being contested in good faith and by appropriate proceedings as above provided to  reasonable period of time  Lessor at its option may do so  in which event the amount so paid (including any penalty or interest incurred as a result of Lessee's failure)  plus int[...]  thereon at the rate of 18% per annum or the highest rate permitted by applicable law  whichever is less  shall be paid by Lessee to Lessor with the next payment of rent

10   **Intent; Title and no Liens**  The parties intend that each Lease constitute a true lease and no Lease shall be construed as a sale of the Equipment  Title to the Equipment si  at all times remain in Lessor  and Lessee shall acquire no ownership  title  property  right  equity  or interest in the Equipment other than its interest as Lessee under the Lease  If  to the extent  Lessee is deemed to have acquired any rights in the Equipment by reason of the payment of a deposit or down payment or the execution of a purchase order or purch[...]  agreement  such rights are hereby sold  assigned and transferred to Lessor free and clear of any liens  However  if a court of competent jurisdiction determines that the Lease is no  true  lease  but rather a lease intended as security  then solely in that event  and for that purpose  Lessee shall be deemed to have granted a security interest in the Lease  Equipment  and all accessions thereto  substitutions and replacements  therefor  and the proceeds (including insurance proceeds) thereof  to secure the prompt payment  performance as and when due of all obligations and indebtedness of Lessee to Lessor  now existing or hereafter arising  Lessee makes  constitutes and appoints Lessor  and  designated agents as its true and lawful attorney-in-fact to execute and file on Lessee's behalf without the signature of Lessee financing statements or other instruments necessary  perfect any security interest in the Equipment or give public notice of the Lease  A copy of the Lease may be filed as a financing statement under the Uniform Commercial Code in  permitted by law  The parties further intend and agree that the Equipment shall remain personal property  notwithstanding the manner in which it may be affixed to any real prope[...]  Lessee agrees to maintain the Equipment free from all claims  liens and legal processes of creditors of Lessee and defend  at its own expense  Lessor's title to the Equipment fr[...]  such claims  Lessee shall also notify Lessor immediately upon receipt of notice of any lien or claim affecting the Equipment

11   **Insurance**  Lessee shall keep the Equipment insured against loss or damage due to fire and the risks normally included in extended coverage  for not less than the greater of  full replacement value or the Stipulated Loss Value  (as defined herein)  and Lessee shall also carry public liability insurance  both personal injury and property damage  covering  Equipment  with a combined single limit of not less than Five Million Dollars per occurrence (unless the Equipment Schedule states a different amount)  All insurance shall be in fo[...]  and amount and with companies  reasonably satisfactory to Lessor  Lessor shall be named as an additional insured with respect to all such liability insurance and loss payee  respect to all property and casualty insurance  Lessee shall pay the premiums therefor and deliver to Lessor evidence satisfactory to Lessor of such insurance coverage  Each insu  shall agree that it will give Lessor at least thirty (30) days prior written notice of the effective date of any cancellation of  or material change in  such policy  The proceeds of su  insurance payable as a result of loss of or damage to the Equipment shall be applied as required by the provisions of Section 12 hereof  If Lessee fails to obtain  and maint  throughout the Lease Term  the required insurance coverage  and provide Lessor satisfactory evidence thereof upon request  Lessor may  but is not obligated to, obtain such cover[...]  and Lessee agrees to pay the premium therefor when due

12   **Loss or Damage**  Lessee assumes the entire risk of loss of or damage to the Equipment from all causes  No loss of or damage to the Equipment shall release Lessee from [...]  obligation under a Lease, which shall continue in full force and effect during the Lease Term  In the event of loss or damage to any item of the Equipment  Lessee shall  at its sole o[...]  and expense  promptly repair and restore such item of the Equipment to the condition required by the Lease  Provided that Lessee is not then in Default  upon completion of su[...]  repairs  Lessor will apply any insurance proceeds received by Lessor on account of such loss or damage to the cost of such repairs  Upon the actual or constructive total loss of [...]  item of the Equipment, or the loss  theft or destruction of or damage to any item of the Equipment to such extent as shall make repair thereof uneconomical or shall render any [...]  permanently unfit for normal use for any reason whatsoever  or the condemnation  confiscation  requisition  seizure  forfeiture or other taking of title to or use of any item of  Equipment during the term of the Lease  Lessee shall  on the next date for the payment of rent  pay to Lessor the rent which has accrued but is unpaid plus the Stipulated Loss V[...]  of the item or items of the Equipment with respect to which the loss has occurred and any other sums due under the Lease with respect to the Equipment (less any insurance proce[...]  or condemnation award actually paid)  As used herein  "Stipulated Loss Value" with respect to any item of Equipment shall mean the amounts set forth on the Schedule of Stipul[...]  Loss Values attached to or incorporated by reference into the Lease  Stipulated Loss Value shall be determined as of the next date on which a payment of rent is or would be due a[...]  a loss or other termination or cancellation of this Lease  and the applicable amount shall be that which is set forth with respect to such rent payment date  After payment of the fi[...]  payment of rent due under the Lease  Stipulated Loss Value shall be the last amount set forth on the Schedule of Stipulated Loss Value

13   **Return of Equipment**  Upon the expiration  earlier termination or cancellation of the Lease  if Lessee has not exercised an option to purchase the Equipment  Lessee shall  at [...]  own expense  return the Equipment to Lessor within ten (10) days in the same condition as when delivered to Lessee hereunder  ordinary wear and tear alone excepted  in complian[...]  with any Return Conditions contained in the Lease  and in such an operating condition that permits the Equipment to perform its originally intended use  and free and clear of all lie[...]  encumbrances or rights of others  by delivery of the Equipment to such place as Lessor shall specify  In addition to Lessor's other rights and remedies hereunder  if the Equipment  not returned in a timely fashion  or if repairs are necessary to place the Equipment in the condition required herein  or if Lessee exercises an option to purchase the Equipment but f[...]  to pay the option price when due  Lessee shall continue to pay rent at the same monthly rate  prorated  if necessary  for the period of delay in returning the Equipment or paying [...]  purchase option price  or for the period of time reasonably necessary to accomplish such repairs  together with the cost of any such repairs  Lessor's acceptance of rent on account  such delay or repair shall not constitute a renewal of the term of the Lease  or a waiver of Lessor's right to prompt return of the Equipment in proper condition

14   **General Indemnity**  Lessee agrees to indemnify  defend  and save harmless Lessor  its agents and employees from and against any and all losses  damages  injuries  clai[...]  demands and expenses  including legal expenses (other than such as may directly and proximately result from the gross negligence or willful misconduct of Lessor  its agents [...]  employees) arising on account of the ordering  acquisition  delivery  installation or rejection of the Equipment  the possession  maintenance  use  condition (including without limita[...]  latent and other defects  any claim in tort for strict liability  and any claim for patent  trademark or copyright infringement) or operation of the Equipment  the return  surrender  sale [...]  other disposition of the Equipment

15   **Tax Treatment and Indemnity**  Lessor and Lessee intend that Lessor and the consolidated taxpayer group of which Lessor is a member shall be treated for federal income [...]  purposes as the owner of all Equipment covered by any Lease  and shall be entitled to the depreciation deductions provided in the Internal Revenue Code of 1986  as amended (  "Code")  Lessee hereby represents  warrants and covenants that  the Equipment is and will be used by Lessee so as to remain  property eligible for depreciation deductions un[...]  Section 167 of the Code  determined in accordance with the Modified Accelerated Cost Recovery System set forth in Section 168 of the Code  during the term of the Lease  and  assigned to the recovery class of property specified in the Lease  Lessee further acknowledges that Lessor has entered into a Lease on the assumption that Lessor will be tax[...]  throughout the Lease Term at the federal corporate income tax rate in effect on the date of the applicable Equipment Schedule (the "Assumed Tax Rate")  At no time during the term  a Lease will the Lessee take or omit to take any action (whether or not such act or omission is otherwise permitted by the terms of the Lease) which act or omission will result in  disqualification of any Equipment for  or the reduction or recapture of  the depreciation deductions  If  as a result of a breach of any representation  warranty or covenant of the Less[...]  contained in the Lease relating to any item of Equipment  Lessor shall either lose or shall not have the right to claim all or any portion of any depreciation deduction with respect to [...]  item of  Equipment  or the depreciation deduction claimed on the income tax return of the Lessor is disallowed or adjusted by the Internal Revenue Service  or the depreciat[...]  deduction is recomputed or recaptured  or there is an increase in the Assumed Tax Rate  then  within thirty (30) days after written notice to Lessee  Lessee shall pay to Lessor as  indemnity and as additional rent  such additional sum amount or from time to time such amounts which  after deducting all taxes required to be paid by Lessor with respect to the receipt of su[...]  amounts  shall  in the reasonable opinion of Lessor  preserve Lessor's after-tax economic yields and cash flows  at the same level as the after-tax economic yields and cash flows  would have been realized by Lessor if such loss  disallowance  adjustment  tax rate change  recomputation or recapture had not occurred  The obligations of Lessee which accr[...]  during the term of a Lease shall survive the expiration or termination of the Lease

16   **Default**  Time is of the essence of each Lease  The following shall be deemed to be an event of default ("Event of Default")  (a) Lessee shall fail to make any payment of rent  any other payment under any Lease within ten (10) days after the same is due  or (b) Lessee shall fail to obtain and maintain the insurance required  or (c) Lessee shall fail to perfo  or observe any other covenant  condition or agreement to be performed or observed by it under the Lease and such failure shall continue unremedied for a period of fifteen (15) d[...]  after written notice thereof to Lessee by Lessor  or (d) Lessee or any guarantor shall file a petition for relief or reorganization or any other petition in bankruptcy or make an assign[...]  for the benefit of its creditors  or if any such petition shall be filed against Lessee or any guarantor and such petition shall not be dismissed within sixty (60) days  or (e) Lessee sh[...]  make or permit any sublease or unauthorized assignment or transfer of the Lease  the Equipment or any interest therein  (f) Lessee shall terminate its corporate existence  consol[...]  with  merge into  or convey or lease substantially all of its assets  as an entirety to  any person without prior written consent of Lessor  (g) any guarantor of the Lease  revokes  attempts to revoke its guaranty  or dies  or becomes insolvent  (h) any certificate  statement  representation or warranty contained in the Lease or furnished with respect to the Lease  the Equipment by Lessee proves to have been false in any material respect at the time it was made  or (i) Lessee shall default in the payment of any other financial obligation to Less  The occurrence of an Event of Default with respect to any Lease shall  at the sole discretion of Lessor  constitute an Event of Default with respect to each other Lease

17   **Remedies**  Upon the occurrence of an Event of Default  Lessor may  at its option  do any one or more of the following with respect to any or all of the Equipment  (a) recover[...]  liquidated damages from Lessee  the then Stipulated Loss Value of the Equipment (determined as of the next date on which a payment is or would have been due)  together with  other sums accrued as of such next payment date  which amount shall bear interest until paid at 18% per annum or the highest rate permitted by applicable law  whichever is less  recover all rent and other payments under the Lease (including any purchase obligation or residual guaranty)  then accrued or thereafter accruing  with respect to any or all of  Equipment (discounted to present value at a rate equal to the 1 year Treasury Constant Maturities Rate as published in "Selected Interest Rates" table of the Federal Rese[...]

Statistical Release H 15(519) for the week ending imr      ly prior to the date of the Lease), and/or (b) require L       assemble the Equipment at the location to w      Equipment was delivered or such other location in reaso       roximity as Lessor shall designate  or to return prompt      see's expense, any or all of the Equipment to Les the location, in the condition and otherwise with all of the terms of Section 13 hereof or any specific Return Conditions, and/or take possession of and render unaffect Lessee any or all of the Equipment  wherever it may be located  without any court order or other process of law and without liability for any damages occasioned by such su possession and/or (c) sell or otherwise dispose of any or all of the Equipment, whether or not in Lessor's possession  in a commercially reasonable manner at public or private with notice to Lessee (the parties agreeing that five (5) days prior written notice shall constitute adequate notice of such sale), with the right of Lessor to purchase and apply proceeds of such disposition, after deducting all costs of disposition (including but not limited to costs of transportation, storage, refurbishing, advertising and broker's fees), i obligations of Lessee under the Lease with Lessee remaining liable for any deficiency  and in either case  with Lessor having no obligation to reimburse Lessee for any excess of net proceeds of disposition or credit for fair market value over such obligations  and/or (d) cancel the Lease by notice in writing to Lessee as to any or all of the Equipment, and/o limitation, any right or remedy available to Lessor under Article 2A and Article 9 of the Uniform Commercial Code)  In addition  Lessee shall be liable for all reasonable legal fees other expenses incurred by reason of any Event of Default or the exercise of Lessor's remedies, including fees or expenses incurred in connection with bankruptcy procee including relief from stay motions, cash collateral disputes, assumption/rejection motions and disputes regarding proposed disclosure statements and plans and all costs and expe incurred in connection with the return of any Equipment in accordance with the terms of Section 13 hereof or in placing such Equipment in the condition required by said Se Unless the context expressly requires otherwise, no right or remedy is intended to be exclusive  but each shall be cumulative  and shall be in addition to any other right or rem referred to above or otherwise available at law or in equity  and may be exercised concurrently or separately from time to time  The failure of Lessor to exercise any rights or rem shall not constitute a waiver of any such right or remedy  In no event shall the execution of a Lease constitute a waiver by Lessor of any preexisting Event of Default in performance of the terms and conditions hereof or of any other Lease

18   Assignment.  Without the prior written consent of Lessor  LESSEE WILL NOT ASSIGN ANY OF ITS RIGHTS UNDER A LEASE, SUBLET THE EQUIPMENT OR OTHER.. PERMIT THE EQUIPMENT TO BE USED BY, OR TO REMAIN IN THE POSSESSION OF, ANYONE BUT LESSEE.  No assignment or sublease shall relieve Lessee of its oblig and Lessee shall remain primarily liable  Lessor may at any time assign any or all of its rights, obligations, title and interest under a Lease, to any other person with or without notic Lessee  If Lessee receives any notice of assignment of a Lease  Lessee will acknowledge receipt in writing and confirm to the assignee the terms  conditions  representations warranties contained in the Lease  Lessor's assignee shall not be obligated to perform any duty  covenant or condition required to be performed by the Lessor under the Lease  an breach by Lessor of the Lease or of any other agreement between Lessor and Lessee, shall excuse performance by Lessee of any provision of the Lease  Upon a breach by Les Lessee shall pursue any rights on account thereof solely against Lessor  Subject to the foregoing  each Lease inures to the benefit of  and is binding upon  the successors and ass of the parties

19.   Lessor's Right to Perform for Lessee.  If Lessee fails to perform, observe or comply with any of its obligations under a Lease  Lessor shall have the right  but shall no obligated, to effect such performance  and the amount of any reasonable expenses of Lessor incurred in connection with such performance  together with interest thereon at 18% annum  or the highest rate permitted by applicable law, whichever is less  shall be payable by Lessee upon demand

20.   Notice.  All notices hereunder shall be in writing  personally delivered, or sent by regular mail or overnight courier service  addressed to the other party at its respective add stated herein of such party or at such other address as the party to receive such notice shall hereafter designate in writing to the other party and shall be effective upon receipt

21.   Miscellaneous.  This Master Lease  the applicable Equipment Schedule and all other documents executed and delivered in connection therewith constitute the entire agreem between the parties with respect to the subject matter of each Lease and shall not be amended except by a writing signed by both parties   To the extent that any Lease wc constitute "chattel paper" as such term is used in the Uniform Commercial Code, no security interest may be created or perfected through a transfer or possession of a Lease wil the  transfer or possession of the original of the Equipment Schedule executed pursuant to this Master Lease and incorporating this Master Lease by reference   LESS UNDERSTANDS AND AGREES THAT NEITHER THE SUPPLIER NOR ANY SALESMAN OR AGENT OF THE SUPPLIER IS AUTHORIZED TO WAIVE OR ALTER ANY TERM CONDITION OF THE LEASE, AND NO REPRESENTATIONS BY THE SUPPLIER AS TO THE EQUIPMENT OR ANY OTHER MATTER SHALL  IN ANY WAY AFFECT LESSEE'S DUTY TO PAY RENT AND OTHERWISE PERFORM ITS OBLIGATIONS   Any provision of a Lease which is prohibited or unenforceable in any jurisdiction shall, as to s jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions  and any such prohibition or unenforceability in jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction   To the extent the rights and remedies conferred upon a lessee by Sections 2A-through 2A-522 of the Uniform Commercial Code are inconsistent with the terms of the Lease  Lessee hereby waives any and all such rights and remedies   The representatic warranties and covenants of Lessee herein shall be deemed to be continuing and to survive the closing of each Lease   Each execution by Lessee of a Lease shall be deeme reaffirmation that there shall have been no material adverse change in the business or financial condition of Lessee from the date of this Master Lease   The obligations of Less under Sections 9, 13, 14 and 15, which accrue during the term of a Lease  shall survive the termination of the Lease   Lessor and Lessee do not intend to contract for  charge receive any interest or other charge which is usurious  If Lessor or any other holder shall ever receive as interest an amount which exceeds the maximum amount of interest perr by law, such excess amount shall be applied to the reduction of any principal amount owing under this Lease or refunded to Lessee and all sums paid or agreed to be paid to Lessor the use, forbearance or detention of the indebtedness of Lessee shall, to the extent permitted by law  be amortized  allocated  prorated and spread throughout the term of the Lease that the actual rate of interest is uniform throughout said term and does not exceed the maximum rate permitted by applicable law   The captions in any Lease are for convenience reference only and shall not define or limit any of the terms or provisions thereof

22   Waiver of Jury Trial.  Lessee and Lessor hereby waive trial by jury in any action or proceeding to which Lessee and Lessor may be parties arising out of or in way pertaining to any Lease.  This waiver is knowingly, willingly and voluntarily made by Lessee and Lessee hereby acknowledges that no representations of fact opinion have been made by any individual to induce this waiver of trial by jury or in any way to modify or nullify its effect.

23    Governing Law.  A Lease shall not be enforceable against Lessor unless and until signed by an officer of Lessor  Each Lease and the rights and obligations of the par thereunder shall in all respects be governed by, and construed in accordance with  the internal laws of the State of Washington (without regard to its conflicts of law rules) including matters of construction, validity and performance  regardless of the location of the Equipment

IN WITNESS WHEREOF, the parties hereto have executed this Master Lease as of  June 14, 2001

Sweezy Construction, Inc.

By _____
            Kent Sweezy, Vice President

SAFECO Credit Company, Inc

By _____
            (Authorized Signature  Title)

# EQUIPMENT SCHEDULE



Account Number: 003-0055436-0
Schedule Number: 0

Name and Address of Lessee:
Sweezy Construction, Inc.
1901 Sweezy Lane
San Benito, Texas 78586
Cameron County

Name and Address of Lessor:
SAFECO Credit Company, Inc.
Dallas Division
1600 N Collins Blvd. Ste 3000
Richardson, TX 75080-5519

THIS EQUIPMENT SCHEDULE incorporates the terms and conditions of the Master Lease Agreement dated as of June 14, 2001 between SAFECO Credit Company, Inc. ("Lessor") and Sweezy Construction, Inc ("Lessee")

Upon execution of this Equipment Schedule, the Equipment described herein shall be subject to the terms and conditions contained herein and the terms and conditions contained in the Master Lease Agreement referred to above, but this Equipment Schedule shall constitute a separate lease agreement

**1  Lease Term.**
The Lease Term shall commence on the date of the Delivery and Acceptance Certificate with respect to the Equipment (the "Acceptance Date") and extend until July 1, 2004

**2  Rent.**
Lessee shall pay to Lessor rent for the Equipment in accordance with the following schedule

Commencing on July 1, 2001 and continuing on the same day of each successive month thereafter until fully paid, One (1) monthly payments of $10,489.26 plus an applicable sales or use tax.
Commencing on August 1, 2001 and continuing on the same day of each successive month thereafter until fully paid, Thirty-Six (36) monthly payments of $10,489 plus any applicable sales or use tax.

**3  Location of Equipment.**
The location of the Equipment is 1901 Sweezy Lane, San Benito, Texas 78586 **Lessee agrees that Lessor may use this address when filing any report or return for personal property tax purposes in connection with this Lease until Lessee provides a different address in writing to Lessor.**

**4  Description of Equipment.**
The Equipment (the "Equipment") consists of the following

> One (1) CMI Model RS 325 soil reclaimer/stabilizer, S/N 270100114 equipped with Cummins 330 HP diesel engine, 4WD, 4 wheel steering, 200 GPM water spray system, and 6' reclamation/housing assembly
> One (1) CMI Model RS 325 soil reclaimer/stabilizer, S/N 560121 equipped with Cummins 330 HP diesel engine, 4WD, 4 wheel steering, 200 GPM water spray system, and 6' reclamation/housing assembly
>
> Total Equipment Cost: $414,559 66
>
> together with all present and future attachments, accessories, additions, accessions, parts and supplies, and any replacements thereof, installed in, affixed to or used in connection with said property and all proceeds of said property

**5  End of Term Option to Renew.**
Provided that no Event of Default has occurred and is continuing, Lessee shall have the option to renew this Lease at the expiration of the Lease Term with respect to all but not less than all of the Equipment, on the terms and conditions of this Lease, for a negotiated renewal term at a negotiated periodic rent based on the fair market rental value of such Equipment determined at the time of renewal

If Lessee desires to exercise this option it shall, at least one hundred eighty (180) days before expiration of the Lease Term, give Lessor written notice of its intention to exercise its option to renew, and shall engage in negotiations with Lessor to determine the periodic rent to be paid during the renewal term Not less than ninety (90) days before expiration of the Lease Term, Lessee shall give Lessor written notice of its election to renew on the terms mutually agreed upon during negotiations

If the parties are unable to agree on the fair market rental value of the Equipment then Lessor and Lessee shall at Lessee's expense obtain appraisal values from three independent appraisers (one to be selected by Lessor, one by Lessee, and the other by the two selected by Lessor and Lessee) and the average fair market rental value as determined by such appraisers shall be binding on the parties hereto

**6  End of Term Option to Purchase**
Provided that no Event of Default has occurred and is continuing Lessee shall have the option to purchase, upon the expiration of the Lease Term or of any subsequent renewal term, if applicable, all but not less than all of the Equipment "AS IS WHERE IS" for the price of $100,000 00 plus any sales use or other tax due ("Purchase Price") subject to this Lease upon the following terms and conditions

If Lessee desires to exercise this option it shall, at least one hundred eighty (180) days before expiration of the Lease Term, give Lessor written notice of its intention to exercise its option to purchase Thereupon, at the expiration of the Lease Term, Lessee shall pay to Lessor in cash the Purchase Price for the Equipment

Notwithstanding any election of Lessee to purchase, the provisions of this Lease shall continue in full force and effect until the passage of ownership of the Equipment upon the date of purchase On the date of purchase Lessor shall deliver to Lessee a bill of sale transferring and assigning to Lessee without recourse or warranty, except in respect of Lessor's acts, all of Lessor's right, title and interest in and to the Equipment Lessor shall not be required to make and may specifically disclaim any representation or warranty as to the condition of the Equipment or any other matters

**7  Notification, Equipment Maintenance and Return Provisions.**
In addition to the terms and conditions of Paragraphs 7 and 13 of the Master Lease Agreement, the parties agree to the following provisions regarding maintenance and return of the Equipment

**A  Notification**
At least 180 days prior to the expiration of the Lease Term, Lessee shall notify Lessor of its intent to either return or purchase the Equipment, or renew the Lease If an appraisal is required by the terms of the Lease Lessee shall submit the appraisal to Lessor within 30 days of Lessee's notice of its intentions as required above At the time of the appraisal the Equipment must be in compliance with the Lease Terms and these Equipment Maintenance and Return Provisions as evidenced by an inspection report to be provided at Lessee's expense, as detailed in Section 7(c) 2 below The appraisal shall be performed by an appraisal firm acceptable to Lessor at Lessee's expense

**B  Maintenance and Use**
1  Lessee shall use the Equipment for the purpose for which it was designed by the original manufacturer and strictly follow the manufacturer's recommended maintenance and service schedule at Lessee's sole cost and expense Lessee will at all times maintain the Equipment in good operational condition and appearance, and shall not discriminate such maintenance between owned and leased equipment Written records of scheduled and other work done shall be kept, dated and signed by the appropriate authority

2. Maintenance and repairs are to be performed by a _____ authorized or trained maintenance individual with the au___ ___ sign the maintenance service, and/or repair log

3. All materials used in operation of the Equipment must be compatible with those recommended by the manufacturer. Any replacement parts must be purchased from so___ approved by the original manufacturer. Copies of all purchase orders are to be filed in the Equipment file

4. Lessee shall not alter or modify the Equipment without written approval, in advance, from Lessor. No components, tools, or attachments are to be removed or separated fro_ Equipment. Any upgrades or improvements made to the Equipment shall become the property of Lessor, and shall not effect, in any adverse manner, the fair market value ___ Equipment at Lease expiration

5. Lessee shall ensure that all Equipment and Equipment operations conform to all applicable local, state, Environmental Protection Agency ("EPA"), and federal laws, hea___ safety guidelines. Lessee shall keep all licenses and operating certificates required for operation of the Equipment current throughout the Lease term

6. Lessor, at its sole discretion may, from time to time, inspect the Equipment at Lessor's sole cost and expense. If any discrepancies are found as they pertain to the ge__ condition of the Equipment, Lessor shall communicate the discrepancies to Lessee in writing. Lessee shall have thirty (30) days to rectify the discrepancies at its sole expe_ Lessee shall pay all expenses for a re-inspection by a Lessor appointed expert if corrective measures are required

## C. Return

In addition to the above, if Lessee elects to return the Equipment to Lessor upon expiration of the Lease Term, then Lessee shall, at Lessee's expense

1. At least 180 days prior to expiration of the Lease, upon receiving reasonable notice from Lessor, make the Equipment available for on-site operational inspections by pote___ purchasers

2. At least 180 days prior to expiration of the Lease, cause the manufacturer's representative or a qualified equipment maintenance provider, acceptable to Lessor, to perfor_ comprehensive physical inspection including testing all material and workmanship of the Equipment, and if during such inspection, examination and test, the authorized insp__ finds any of the material or workmanship to be defective or the Equipment not operating within the manufacturer's specifications, then Lessee shall repair or replace such defe_ material and, after corrective measures are completed, Lessee will provide for a follow-up inspection of the Equipment by the authorized inspector as outlined in the prece___ clause. Written reports of the inspections shall certify that the Equipment has been properly inspected, examined, and tested, and is in good operating condition. The reports sh_ returned to Lessor with the Equipment

3. Provide that the Equipment will be cleaned and cosmetically acceptable, and in such condition so that it may be immediately installed and placed into use

4. Properly remove all Lessee installed markings, commercial logos, advertising, graffiti, insignias, and lettering, and repaint affected surfaces in such a way that the area blend__ with the remainder of the Equipment. Any manufacturer's identity plates or markings shall not be removed

5. Provide for the de-installation, packing, transporting, and certifying of the Equipment to include, but not be limited to, the following, (i) the manufacturer's representative shall install the Equipment (including where applicable all wire, cable, and mounting hardware) in accordance with the specifications of the manufacturer, (ii) all process fluids shall removed from the Equipment and disposed of in accordance with then current waste disposal laws and regulations including regulations specified by the EPA and rel_ government agencies. At no time are materials which could be considered hazardous waste by any regulatory authority to be shipped with the Equipment, (iii) all internal fluids s_ as lube oil and hydraulic fluid are to be filled to operating levels, filler caps are to be secured and disconnected hoses are to be sealed to avoid spillage, (iv) the Equipment shall returned with a certificate supplied by the manufacturer's representative qualifying the Equipment to be in good condition and eligible for the manufacturer's maintenance plan certificate of eligibility shall be transferable to another operator of the Equipment (v) the Equipment shall be packed properly and in accordance with the manufactur__ recommendations, and any special transportation devices supplied with the Equipment when new must be re-used for shipping, and (vi) Lessee shall transport the Equipment i_ manner consistent with the manufacturer's recommendations and practices

6. Ensure that all inspections, overhauls, rebuilds, or certifications known to be or expected to be due within six (6) months are completed prior to re-delivery

7. Return the Equipment with all maintenance records, maintenance record jackets, repair orders, license plates, registration certificates, and all other similar documents pertai_ to the Equipment in their entirety

8. Provide transportation of the Equipment to not more than two individual location(s) anywhere in the continental United States selected by Lessor

9. Obtain and pay for a policy of transit insurance for the re-delivery period in an amount equal to the replacement value of the Equipment and Lessor shall be named as loss pa_ on all such policies of insurance

10. Be responsible for the cost of all repairs, alterations, inspections, appraisals, storage costs, insurance costs, demonstration costs, and other related costs necessary to place _ Equipment in such condition as to be in complete compliance with this Lease

11. Provide insurance and safe, secure storage for the Equipment for 120 days after expiration of the Lease at an accessible location satisfactory to Lessor

12. Lessor shall have the right to attempt sale of the Equipment from Lessee's plant with the Lessee's full cooperation and assistance, for a period of 120 days from Lease expira___ During this period, the Equipment must remain operational. Lessee shall provide adequate personnel, electrical power, lighting, water, heat, and any other materials necessary maintain and demonstrate the Equipment to any potential buyer

13. If an Equipment auction is necessary, Lessor shall have the right to auction the Equipment on-site. Provided, however, that the preparation for and conduction of the auction not unreasonably interfere with the normal operation of the Lessee's business

14. The Equipment is limited to 3,000 hours of use over the Lease Term. Lessee shall be assessed _____ per hour for each hour of use over 3,145 total hours on CMI mo___ RS325 soil reclaimer/stabilizer S/N 2770100114 and over 3,000 total hours on CMI Model RS325 soil reclaimer/stabilizer S/N (pending from dealer)

15. All wear parts must have no more than 40% estimated time of wear incurred upon them individually

16. The tires shall be of the same original size, type and manufacturer (or similar quality manufacturer) as upon delivery to Lessee. No recaps or retreads on the tires are permitt_ Tires shall have no more than 40% wear incurred on the tread, which should be original casings which are free of material cuts or gouges

17. The engine, clutch, transmission, torque converter, planetary drive, brakes, hitch and all other major wear parts must have not incurred more than 40% time or wear and _ have less than six months remaining before the next engine overhaul or replacement as recommended by the manufacturer and published in standard maintenance manuals on individual component basis, as applicable. Lessee will reimburse to Lessor for the full cost of an engine overhaul or replacement on these and all other major wear parts, to determined by a licensed manufacturer equipment maintenance provider to be selected at Lessor's sole discretion in conjunction with a complete physical inspection a independent lab oil and fluid sample analysis of the Equipment as noted below in provision 23, if such overhaul or replacement is required within six months at previous usage rate

18. The cost of repairs to the Equipment for damage to the exterior and interior of the unit (including door operation, floor damage, water leaks and side and nose damage) may _ exceed $250.00 and in no case shall any glass be broken, chipped or cracked. All operating components of the Equipment must be able to perform their functions as origin_ intended. All mechanical and electrical equipment must be in proper operating form

19. The engine, clutch, transmission, torque converter, planetary drive, brakes, hitch and all other major wear parts must have not incurred more than 40% time or wear and _ have less than six months remaining before the next engine overhaul or replacement as recommended by the manufacturer and published in standard maintenance manuals on individual component basis, as applicable. Lessee will reimburse to Lessor for the full cost of an engine overhaul or replacement on these and all other major wear parts, to determined by a licensed manufacturer equipment maintenance provider to be selected at Lessor's sole discretion in conjunction with a complete physical inspection a independent lab oil and fluid sample analysis of the Equipment as noted below in provision 23, if such overhaul or replacement is required within six months at previous usage rate

20. The frame and all structural members shall be structurally sound without any breaks or cracks. The Equipment must be returned with a fresh paint job and in a clean condition

21  All hydraulic lines must be in working order w          .aks or cracks  Hydraulic pumps must be in working      _    .d able to operate within manufacturers specific. Hydraulic cylinders must be operational with fresh cartridges installed, and no evidence of leaks, scoring or bent rods  All hydraulics will operate properly at fully rated loads

22  The Equipment must be returned with the cutters, bits, tooth holders, tooth blocks and wear plates all in good and operable condition and having not incurred more than time or wear  as determined by a factory authorized service representative  The Lessee will be fully responsible for all time or wear on the tooth holders cutters, bits  tooth h' wear plates, and cutter assembly/drum  The cutter assembly/drum must be fully operational according to manufacturer's specifications and must be in good condition damage, cracks  excessive metal wear, or corrosion

23  Lessee will provide Lessor with at least 180 days advance, written notice prior to the lease termination date of their intent to return the Equipment t. Lessor and will reimburse to Lessor $750 00 to have a complete commodity check of the Equipment performed by a qualified equipment appraiser t. selected by Lessor at its sole discretion to determine the current physical condition of the Equipment in accordance with the standard and equipment spe return provisions incorporated into this Equipment Lease Schedule  In association with this commodity check, Lessee will also reimburse to Lessor $5C for an independent lab analysis of engine oil, transmission, hydraulic, differential, and axle oil/fluids to check for excessive wear or contamination  Based : the results of the commodity check and independent lab oil and fluid analysis, Lessee will be responsible for all costs for maintenance, service, and re; necessary to bring the Equipment into full compliance with these return provisions

8  Recovery Classification
Lessee represents and warrants that the Equipment is classified as 5 year property for the purposes of Section 168(e) of the Internal Revenue Code  and Lessee agrees to inde. Lessor for any breach of these representations and warranties pursuant to Paragraph 15 of the Master Lease Agreement - Tax Treatment and Indemnity

9 Sale-Leaseback Transaction  Lessor is acquiring the Equipment from Lessee solely for the purpose of leasing it back to Lessee and possession of the Equipment will be ret. by Lessee  This transaction is made in good faith and for valuable consideration and is not intended for security or for the purpose of defrauding any creditors of Lessee  Le. represents and warrants to Lessor that  (a) the sale of the Equipment to Lessor  and the execution, delivery and performance by Lessee of the bill of sale (the "Bill of Sale") relati. the Equipment has been duly authorized by all necessary corporate action on the part of Lessee, does not require the consent of any shareholder  trustee or holders of indebtedness of Lessee (except such as has been duly obtained) and does not and will not contravene any law, governmental rule  regulation or order now binding on Lessee, or charter or by-laws of Lessee, nor contravene the provisions of, or constitute a default under  any indenture, mortgage, contract or other agreement to which Lessee is a party c which its property is bound, (b) the Bill of Sale transfers to Lessor valid title to the Equipment free and clear of any and all liens, encumbrances, charges or defects, and (c) no filir recordation must be made, no notice must be given and no other action must be taken with respect to any state or local jurisdiction  or any person, in order to preserve to Lessor all rights transferred by the Bill of Sale

THIS SPACE LEFT BLANK INTENTIONALLY

10. **Schedule of Stipulated Loss Values.**
The Schedule of Stipulated Loss Values provided shall ...able solely to the Equipment described in this Equipme... ...ule

| Per | Date | Amount | Percent of Cost |
|---|---|---|---|
| 0 | 6/30/01 | 417,335.45 | 100.31 |
| 1 | 7/31/01 | 419,945.32 | 100.94 |
| 2 | 8/31/01 | 412,012.56 | 99.03 |
| 3 | 9/30/01 | 404,031.14 | 97.11 |
| 4 | 10/31/01 | 395,994.64 | 95.18 |
| 5 | 11/30/01 | 387,901.70 | 93.24 |
| 6 | 12/31/01 | 379,759.78 | 91.28 |
| 7 | 1/31/02 | 371,561.58 | 89.31 |
| 8 | 2/28/02 | 363,306.62 | 87.33 |
| 9 | 3/31/02 | 354,994.69 | 85.33 |
| 10 | 4/30/02 | 346,639.52 | 83.32 |
| 11 | 5/31/02 | 338,227.48 | 81.30 |
| 12 | 6/30/02 | 329,771.83 | 79.27 |
| 13 | 7/31/02 | 321,258.92 | 77.22 |
| 14 | 8/31/02 | 312,688.05 | 75.16 |
| 15 | 9/30/02 | 304,072.97 | 73.09 |
| 16 | 10/31/02 | 295,400.02 | 71.00 |
| 17 | 11/30/02 | 286,668.51 | 68.91 |
| 18 | 12/31/02 | 277,892.17 | 66.80 |
| 19 | 1/31/03 | 269,057.35 | 64.67 |
| 20 | 2/28/03 | 260,163.35 | 62.53 |
| 21 | 3/31/03 | 251,209.94 | 60.38 |
| 22 | 4/30/03 | 242,216.00 | 58.22 |
| 23 | 5/31/03 | 233,162.93 | 56.04 |
| 24 | 6/30/03 | 224,068.96 | 53.86 |
| 25 | 7/31/03 | 214,915.48 | 51.66 |
| 26 | 8/31/03 | 205,701.60 | 49.44 |
| 27 | 9/30/03 | 196,446.20 | 47.22 |
| 28 | 10/31/03 | 187,130.68 | 44.98 |
| 29 | 11/30/03 | 177,754.14 | 42.73 |
| 30 | 12/31/03 | 168,335.47 | 40.46 |
| 31 | 1/31/04 | 158,856.05 | 38.18 |
| 32 | 2/29/04 | 149,314.99 | 35.89 |
| 33 | 3/31/04 | 139,712.06 | 33.58 |
| 34 | 4/30/04 | 130,036.67 | 31.26 |
| 35 | 5/31/04 | 120,288.52 | 28.91 |
| 36 | 6/30/04 | 110,467.37 | 26.55 |

June 14, 2001
Date

Sweezy Construction, Inc.

By _____
Kent Sweezy, Vice President

6/14/2001
Date

SAFECO Credit Company, Inc.

By _____
(Authorized Signature, Title)


**S A F E C O**

**DELIVERY AND ACCEPTANCE**
**CERTIFICATE**

SAFECO Credit Company, Inc.
Dallas Division
1600 N Collins Blvd. Ste 3000
Richardson, TX 75080-3519

Account Number: 003-0055406-0

To: SAFECO Credit Company, Inc., its successors and assigns ("SAFECO")

> One (1) CMI Model RS 325 soil reclaimer/stabilizer, S/N 270100114 equipped with Cummins 330 HP diesel engine, 4WD, 4 wheel steering, 200 GPM water spray system, and 6' reclamation/housing assembly
> One (1) CMI Model RS 325 soil reclaimer/stabilizer, S/N 560121 equipped with Cummins 330 HP diesel engine, 4WD, 4 wheel steering, 200 GPM water spray system, and 6' reclamation/housing assembly

All of the above equipment is hereinafter referred to as the "Equipment".

The undersigned represents and warrants to SAFECO that (i) it has had a reasonable opportunity to inspect the Equipment described above (ii) the Equipment has been fully delivered to and accepted by the undersigned and is conforming and (iii) any installation or other work necessary for the Equipment to be placed in service has been completed in a satisfactory manner.

The undersigned affirms that SAFECO is not the manufacturer, distributor or seller of the Equipment and has no special knowledge or expertise as to it and has made no warranties or representations, express or implied, as to any matter whatsoever, including without limitation, the condition, quality of the Equipment, its year of manufacture, its merchantability or its fitness for any particular purpose, its design or capacity or that it will satisfy the requirements of any law, specification or contract pertaining thereto or any warranties against patent infringement or latent defects. Without prejudice to any rights we may have against the manufacturer or supplier, we accept the Equipment AS IS, WHERE IS, with respect to our agreement with SAFECO. We agree SAFECO has no responsibility for the selection or satisfactory performance of the Equipment and we will settle any claims, defenses and set-offs we may have directly with the supplier or manufacturer without affecting our obligations to SAFECO.

If this transaction is a lease, the undersigned acknowledges that, prior to becoming bound under the lease, it received a copy of, and approved the form of, purchase order, supply contract or purchase agreement relating to the Equipment and understands that it may have rights under those agreements and contact the vendor or supplier for a description of any such rights it may have.

The undersigned certifies the first delivery of the Equipment was received on ___6/14/2001___, and it is now located at 1901 Sweezy Lane, San Be... Texas 78586.

DO NOT SIGN THIS CERTIFICATE UNTIL THE EQUIPMENT HAS ACTUALLY BEEN RECEIVED AND ACCEPTED.  SAFECO MAY RELY ON THIS CERTIFICATE IN ADVANCING FUNDS.

June 14, 2001
Date

**Sweezy Construction, Inc.**

By: _____
        Kent Sweezy, Vice-President

*EXHIBIT "B"*

# CONTINUING GUARANTY
## (Individual Guarantor)


**SAFECO**

Name and Address of Guarantor
Kent Sweezy
604 Parkview Circle
Harlingen, Texas 78550

Name and Address of Creditor
SAFECO Credit Company, Inc
Dallas Division
500 N Central Expwy #300
Plano  TX  75074-6770

The undersigned ("Guarantor") requests that SAFECO Credit Company, Inc ("Creditor") extend credit or other financial accommodations to Sweezy Construction, Inc. ("Debtor")

In consideration of this extension of credit or financial accommodation  and other good and valuable consideration  receipt and sufficiency of which is acknowledged  Guarantor as primary obligor and not endorser  absolutely  and unconditionally guarantees the full and prompt payment when due of all present and future obligations of Debtor to Creditor  however created, direct or indirect  absolute or contingent, now existing or hereafter arising, due or to become due  whether the obligations represent principal  interest  rent  late charges indemnities  an accelerated balance  liquidated damages, a deficiency after sale or other disposition of leased equipment or collateral, or other sums owing to Creditor (all obligations being hereafter referred to as the "Indebtedness")  Guarantor further agrees to pay all costs and expenses of every kind and nature  including without limitation  attorney (incurred with or without litigation and in bankruptcy proceedings), out-of-pocket expenses and court costs  paid or incurred by Creditor in attempting to collect the Indebtedness and enforcing, preserving or interpreting this "Guaranty"

This is a continuing guaranty  Creditor may from time to time grant credit or other financial accommodations to Debtor without further notice to Guarantor  The Guaranty shall remain full force and effect until Guarantor delivers to Creditor written notice revoking the Guaranty as to Indebtedness incurred after receipt of the written notice  but the revocation shall affect any Indebtedness incurred prior to receipt of the notice  The execution of this Continuing Guaranty shall not extinguish  release or waive any obligations  promises or guaranties contained in any guaranty previously executed by Guarantor

Guarantor represents and warrants to Creditor that  (a) Guarantor has the legal capacity and power to enter into this Guaranty and perform its obligations hereunder  and (b) this Guaranty constitutes the valid, binding and enforceable obligation of Guarantor in accordance with its terms

Guarantor waives notice of acceptance of this Guaranty by Creditor and all notices and demands of any kind to which Guarantor may be entitled  including without limitation  all demands for payment and notices of nonpayment, presentment  protest, notice of protest  and dishonor and notice of disposition of collateral under UCC 9-504  Guarantor further waives any defense arising by reason of the disability of Debtor, any lack of authority of Debtor with respect to the Indebtedness  the invalidity, illegality or lack of enforceability of the Indebtedness the failure of Creditor to acquire title to any leased equipment or a security interest in any collateral or to perfect or maintain any interest therein or the loss or impairment of the liability of Debtor  Payment of any sums now or hereafter owing to Guarantor by Debtor is hereby subordinated in right of payment to the payment of the Indebtedness

Without notice to or consent of Guarantor and without affecting the obligations of Guarantor under this Guaranty  Creditor may from time to time (a) change the terms of the Indebtedness with the concurrence of Debtor  including but not limited to  renewal, extension  refinancing  modification of the interest rate or change in the manner or place of payment, (b) accelerate the maturity of  or release or compromise  any Indebtedness, or release any guarantor or release or impair any security for this Guaranty or the Indebtedness  (c) proceed against Guarantor for payment of any Indebtedness without first proceeding against the Debtor or any other guarantor or any security for the Indebtedness, (d) abstain from taking any action exercising any right against Debtor  the security or any other guarantor  The rights of Creditor are cumulative and shall not be exhausted by exercise of any rights against Guarantor or Debtor until all Indebtedness has been paid

The obligations of each Guarantor shall be joint and several  binding upon their respective heirs  personal representatives  successors and assigns and inure to the benefit of and successors and assigns of Creditor  If legal action is taken to enforce this Guaranty  such action may be maintained separately or joined with an action against Debtor or any other Guarantor of Debtor's obligations

If a claim is made upon Creditor at any time for repayment of any amounts received by Creditor from any source on account of any Indebtedness and Creditor repays or becomes liable to repay such claim by reason of any judgment or order of any court or administrative body, or any settlement or compromise thereof  Guarantor shall be liable to Creditor hereunder for such amounts to the same extent as Guarantor would have been liable to Creditor if such amounts had never been received by Creditor  notwithstanding the termination of this Guaranty or the cancellation of any note or other instrument evidencing any Indebtedness of Debtor

This writing is intended by the parties to be an integrated and final expression of this Guaranty agreement and also is intended to be a complete and exclusive statement of the terms of that agreement  No course of prior dealing between the parties  no usage of trade and no parol or extrinsic evidence of any nature shall be used to supplement  modify or vary any of the terms of this Guaranty  If any provision of this Guaranty is in conflict with any applicable statute, rule or law  such provision shall be deemed to be null and void to the extent it is in conflict  but without invalidating any other provision of this Guaranty  There are no conditions to the full effectiveness of this Guaranty

Any notice or demand required or permitted to be given by Creditor to Guarantor may be given by first class mail  postage prepaid or overnight delivery to Guarantor at the address shown above until Guarantor advises Creditor of a different address in writing

GUARANTOR UNCONDITIONALLY WAIVES ITS RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS GUARANTY  THE INDEBTEDNESS  OR ANY DEALINGS BETWEEN GUARANTOR AND CREDITOR RELATING TO THIS GUARANTY

This Guaranty shall be governed by and construed in accordance with the internal laws (without applying the conflicts of law rules) of the State of **Washington**

February  9  1998
Date

Guarantor _____
Kent Sweezy

Witness _____
Claude E M'William

# EXHIBIT "C"



# SAFECO

# CONTINUING GUARANT
(Individual Guarantor)

Name and Address of Guarantor
Pauline Sweezy
604 Parkview Circle
Harlingen, Texas 78550

Name and Address of Creditor
SAFECO Credit Company, Inc.
Dallas Division
505 N Central Expwy #300
Plano, TX 75074-5770

The undersigned ("Guarantor") requests that SAFECO Credit Company, Inc ("Creditor") extend credit or other financial accommodations to Sweezy Construction, Inc ("Debtor")

In consideration of this extension of credit or financial accommodation, and other good and valuable consideration receipt and sufficiency of which is acknowledged Guarantor as primary obligor and not endorser absolutely and unconditionally guarantees the full and prompt payment when due of all present and future obligations of Debtor to Creditor howsoever created, direct or indirect, absolute or contingent, now existing or hereafter arising due or to become due whether the obligations represent principal, interest rent late charges indemnities, an accelerated balance, liquidated damages, a deficiency after sale or other disposition of leased equipment or collateral or other sums owing to Creditor (all such obligations being hereafter referred to as the "Indebtedness") Guarantor further agrees to pay all costs and expenses of every kind and nature including without limitation attorney fees (incurred with or without litigation and in bankruptcy proceedings) out-of-pocket expenses and court costs, paid or incurred by Creditor in attempting to collect the Indebtedness and in enforcing, preserving or interpreting this "Guaranty"

This is a continuing guaranty. Creditor may from time to time grant credit or other financial accommodations to Debtor without further notice to Guarantor. The Guaranty shall remain in full force and effect until Guarantor delivers to Creditor written notice revoking the Guaranty as to Indebtedness incurred after receipt of the written notice, but the revocation shall not affect any Indebtedness incurred prior to receipt of the notice. The execution of this Continuing Guaranty shall not extinguish, release or waive any obligations, promises or guarantees contained in any guaranty previously executed by Guarantor

Guarantor represents and warrants to Creditor that (a) Guarantor has the legal capacity and power to enter into this Guaranty and perform its obligations hereunder, and (b) this Guaranty constitutes the valid, binding and enforceable obligation of Guarantor in accordance with its terms

Guarantor waives notice of acceptance of this Guaranty by Creditor and all notices and demands of any kind to which Guarantor may be entitled including without limitation all demands for payment and notices of nonpayment, presentment, protest, notice of protest, and dishonor and notice of disposition of collateral under UCC 9-504. Guarantor further waives any defense arising by reason of the disability of Debtor, any lack of authority of Debtor with respect to the Indebtedness the invalidity, illegality or lack of enforceability of the Indebtedness the failure of Creditor to acquire title to any leased equipment or a security interest in any collateral or to perfect or maintain any interest therein or the loss or impairment of the liability of Debtor Payment of any sums now or hereafter owing to Guarantor by Debtor is hereby subordinated in right of payment to the payment of the Indebtedness

Without notice to or consent of Guarantor, and without affecting the obligations of Guarantor under this Guaranty Creditor may from time to time (a) change the terms of the Indebtedness with the concurrence of Debtor, including but not limited to renewal, extension refinancing, modification of the interest rate or change in the manner or place of payment, (b) accelerate the maturity of, or release or compromise, any Indebtedness or release any guarantor or release or impair any security for this Guaranty or the Indebtedness, (c) proceed against the guarantor for payment of any Indebtedness without first proceeding against the Debtor or any other guarantor or any security for the Indebtedness (d) abstain from taking any action or exercising any right against Debtor, the security or any other guarantor. The rights of Creditor are cumulative and shall not be exhausted by exercise of any rights against Guarantor or Debtor until all Indebtedness has been paid

The obligations of each Guarantor shall be joint and several binding upon their respective heirs, personal representatives successors and assigns and inure to the benefit of the successors and assigns of Creditor. If legal action is taken to enforce this Guaranty, such action may be maintained separately or joined with an action against Debtor or any other Guarantor of Debtor's obligations

If a claim is made upon Creditor at any time for repayment of any amounts received by Creditor from any source on account of any Indebtedness and Creditor repays or becomes liable to repay such claim by reason of any judgment or order of any court or administrative body or any settlement or compromise thereof Guarantor shall be liable to Creditor hereunder for such amounts to the same extent as Guarantor would have been liable to Creditor if such amounts had never been received by Creditor, notwithstanding the termination of this Guaranty or the cancellation of any note or other instrument evidencing any Indebtedness of Debtor

This writing is intended by the parties to be an integrated and final expression of this Guaranty agreement and also is intended to be a complete and exclusive statement of the terms of that agreement. No course of prior dealing between the parties no usage of trade and no parol or extrinsic evidence of any nature shall be used to supplement, modify or vary any of the terms of this Guaranty. If any provision of this Guaranty is in conflict with any applicable statute rule or law, such provision shall be deemed to be null and void to the extent it is in conflict, but without invalidating any other provision of this Guaranty. There are no conditions to the full effectiveness of this Guaranty

Any notice or demand required or permitted to be given by Creditor to Guarantor may be given by first class mail postage prepaid or overnight delivery to Guarantor at the address shown above until Guarantor advises Creditor of a different address in writing

GUARANTOR UNCONDITIONALLY WAIVES ITS RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS GUARANTY THE INDEBTEDNESS OR ANY DEALINGS BETWEEN GUARANTOR AND CREDITOR RELATING TO THIS GUARANTY

This Guaranty shall be governed by and construed in accordance with the internal laws (without applying the conflicts of law rules) of the State of Washington

February 4 , 1998
Date

Guarantor _____
Pauline Sweezy

Witness _____

# EXHIBIT "D"

 **SAFECO**

SAFECO CREDIT COMPANY

1600 N. Collins Boulevard          Phone    (972) 808-4000
Richardson  TX 75080-4591                   (800) 882-8045
                                   Fax      (972) 808-4715
                                   www.safeco.com

                                   Mailing Address
                                   PO Box 33960
August 31, 2001                    Richardson  TX 75083-3960

Kent Sweezy, Vice-President        Via    Fax (956) 399-7541
Sweezy Construction, Inc                  Federal Express Tracking
1901 Sweezy Lane                          #7924 4167 8840
San Benito, TX 78586                      USPS Certified Mail
                                          # 7000 0520 0022 0895 3858

RE       NOTICE OF DEFAULT AND DEMAND  Lease account # 003-0055436-001

Gentlemen

You are in default on your Master Lease Agreement and Equipment Schedule #001, both executed on <u>June 14, 2001</u>, by (A) your failure to provide proof of required insurance coverage and (B) your failure to pay the following scheduled rent, late charges and other fees when due

| Due Date | Rental | Use Tax | Late Charges | Admin Fee | Total |
|----------|--------|---------|--------------|-----------|-------|
| 7/01/01 | $    0.01 | $   0.00 | $ 1,185.46 | $ 500.00 | $1,685.47 |
| 8/01/01 | 10,489.26 | 865.37 | 1,135.46 | 0.00 | 12,490.09 |
| | | | Total Past Due - | | $14,175.56 |

As a result of your default and in accordance with the terms of Section 17  Remedies, of the Master Lease, SAFECO hereby declares the amount of $426,258.03 to be immediately due and payable and further demands the following

   Immediately deliver each item of Equipment described in Equipment Schedule No  001 to the following location

        CLM Equipment Company, Inc.
        1006 Vista
        Pasadena, TX  77504

The amount of  <u>$ 440,737.23</u> plus applicable sales tax represents default interest of $166.46, the past due administrative fee of $500.00, late charges of $2,320.92, and the discounted remaining rents and purchase option of $437,749.85  This amount shall continue to bear default interest at the rate of 18% until paid. From this amount, we will deduct the net proceeds, which are realized from any disposition of the Equipment and you will remain fully liable for any deficiency

Your payment should be sent to the following address via cashiers check or wire transfer.

Physical Address                   Wire Instructions
SAFECO Credit Company, Inc         Bank:           Bank of America, Seattle, WA
1600 N  Collins Blvd., 3rd Floor   Account No.:    1373-109
Richardson, TX 75080               Account Name    SAFECO Credit Company, Inc.
                                   ABA No.:        125-000-024
                                   Reference       #003-0055436-001

*EXHIBIT "E"*

Page 2
8/29/01

In the event that the Equipment or all amounts demanded are not received by SAFECO by September 10, 2001, we will refer this matter to our attorney   You will then be legally responsible for the costs of collection and repossession, court costs and attorney fees in addition to the amount of our demand. Your delivery of the Equipment does not relieve you of your responsibility to insure the Equipment nor relieve you of the risk of loss.

By copy of this letter, notice of default and demand is also made upon the guarantors for performance under their respective guaranties.

Sincerely,

Michael Lindig
Credit Analyst
SAFECO Credit Company, Inc

cc    **Personal Guarantors:**
     Kent Sweezy                           Via USPS Certified Mail
     604 Parkview Circle                 #7000 0520 0022 0895 3841
     Harlingen, TX 78550                Fed Ex #7909 5510-8322

     Pauline Sweezy                      Via USPS Certified Mail
     604 Parkview Circle                 #7000 0520 0022 0895 3834
     Harlingen, TX  78550               Fed Ex #7909 5510-8322

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1  Article Addressed to

Mr. Kent Sweezy
Sweezy Construction, Inc.
P.O. BOx 531888
Harlingen, TX 78553

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly) | B. Date of Delivery

C. Signature
X  ☐ Agent  ☐ Addressee

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below  ☐ No

3. Service Type
☒ Certified Mail    ☐ Express Mail
☐ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ C O D

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2  Article Number (Copy from service label)
7000 0520 0022 0895 3858

PS Form 3811, July 1999          Domestic Return Receipt          102595-00-M-0952

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you
- Attach this card to the back of the mailpiece, or on the front if space permits

1  Article Addressed to
Pauline Sweezy
604 Parkview Circle
Harlingen, TX 78550

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly) | B. Date of Delivery

C. Signature
X  ☐ Agent  ☐ Addressee

D. Is delivery address different from item 1?  ☐ Yes
If YES  enter delivery address below  ☐ No

SEP 1 2 2001

3. Service Type
☒ Certified Mail    ☐ Express Mail
☐ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ C O D

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2  Article Number (Copy from service label)
7000 0520 0022 0895 3834

PS Form 3811, July 1999          Domestic Return Receipt          102595-00-M-095~

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits

1  Article Addressed to
Kent Sweezy
604 Parkview Circle
Harlingen, TX 78550

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly) | B. Date of Delivery

C. Signature
X  ☐ Agent  ☐ Addressee

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below  ☐ No

3. Service Type
☒ Certified Mail    ☐ Express Mail
☐ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ C O D

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2  Article Number (Copy from service label)
7000 0520 0022 0895 3841

PS Form 3811, July 1999          Domestic Return Receipt          102595-00-M-095



**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

7000 0520 0022 5895 3658

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Recipient's Name *(Please Print Clearly) (To be completed by mailer)*
Mr. Kent Sweezy    Sweezy Construction, Inc.
Street, Apt. No.; or PO Box No.
P.O. Box 531888
City, State, ZIP+4
Harlingen, TX 78553

PS Form 3800, February 2000                See Reverse for Instructions

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

7000 0520 0022 5895 3634

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Recipient's Name *(Please Print Clearly) (To be completed by mailer)*
Pauline Sweezy
Street, Apt. No., or PO Box No.
604 Parkview Circle
City, State, ZIP+4
Harlingen, TX 78550

PS Form 3800, February 2000                See Reverse for Instructions

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

7000 0520 0022 5895 3641

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Recipient's Name *(Please Print Clearly) (To be completed by mailer)*
Kent Sweezy
Street, Apt. No.; or PO Box No.
604 Parkview Circle
City, State, ZIP+4
Harlingen, TX 78550

PS Form 3800, February 2000                See Reverse for Instructions

Case 1:01-cv-00191   Document 1   Filed in TXSD on 11/13/2001   Page 23 of 28

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| SAGE CAPITAL CORPORATION f/k/a | § | |
| SAFECO CREDIT CO., INC., | § | |
| Plaintiff | § | |
| | § | CIVIL ACTION NO. B -01- 19 |
| vs. | § | |
| | § | |
| SWEEZY CONSTRUCTION, INC., | § | |
| KENT M. SWEEZY and PAULINE | § | |
| SWEEZY, | § | |
| Defendants | § | |

| | | |
|---|---|---|
| STATE OF TEXAS | } | |
| | } | AFFIDAVIT |
| COUNTY OF _DALLAS_ | } | |

**BEFORE ME,** the undersigned official, on this day appeared MICHAEL LINDIG, who is personally known to me, and first being duly sworn according to law upon his oath deposed and said:

1.   My name is Michael Lindig. I am the Credit Analyst of Sage Capital Corporation f/k/a Safeco Credit Company, Inc. (hereinafter *"Sage"*). In that capacity I have access to all records and documents maintained by Sage (hereinafter the *"Agreement"*) entered into between Sage and Sweezy Construction Company, Inc. (hereinafter *"Sweezy"*) and have personal knowledge of same.

2.   On or about June 14, 2001, Plaintiff and Defendant entered into a written Equipment Lease, by the terms of which Plaintiff leased to Defendant: (i) One (1) CMI Model RS 325 soil reclaimer/stabilizer, S/N 270100114 equipped with Cummins 330 HP diesel engine, 4 WD, 4 wheel steering, 200 GPM water spray system, and 6' reclamation/housing assembly; (ii) One (1) CMI Model RS 325 soil reclaimer/stabilizer, S/N 560121 equipped with Cummins 330 HP diesel engine, 4WD, 4 wheel steering, 200 GPM water spray system, and 6' reclamation/housing assembly, together with all present and future attachments, accessories, additions, parts and supplies, and any replacements

- 1 -          ***EXHIBIT "F"***

Case 1:01-cv-00191   Document 1   Filed in TXSD on 11/13/2001   Page 24 of 28

thereof, installed in, affixed to or used in connection with said property and all proceeds of said property (*the "Leased Equipment"*) for a term of thirty-six (36) months, for which Defendant promised to pay an agreed monthly rental of Ten Thousand Four Hundred Eighty-Nine and 26/100 ($10,489.26) per month, plus applicable taxes. A true copy of the Equipment Lease is attached hereto, incorporated herein for all purposes, and marked as *Exhibit "A"* to the Original Complaint.

3.       The Equipment Lease provides that, if Defendant Sweezy failed to pay any installment of rent within ten (10) days after the same is due and payable, Plaintiff shall have the right to declare the entire amount of rent therein provided, to be immediately due and payable, without notice or demand, notice of default, notice of intent to accelerate and notice of acceleration being expressly waived, and recover possession of the Leased Equipment. The Equipment Lease further provides that Plaintiff is entitled to recover from Defendant all expenses which Plaintiff may incur in connection with the enforcement of any of its rights thereunder, including attorney's fees. The Equipment Lease further provides that the Plaintiff is not the manufacturer of the Leased Equipment nor the manufacturer's agent, that the Lease Equipment was selected by Defendant and not by Plaintiff, that Plaintiff has made and makes no representations or warranties concerning the merchantability of the Leased Equipment or its fitness for any use to which it may be put by Defendant, and that Defendant shall keep the Leased Equipment in good repair and furnish necessary service and repair at Defendant's expense.

4.       Plaintiff fully performed all of its duties and obligations under the terms of the Equipment Lease. Defendant received possession of the Leased Equipment on or about June 14, 2001, as evidenced by the written Delivery/Acceptance Certificate, executed by Defendant, a true copy of which is attached hereto, incorporated herein for all purposes, and marked *Exhibit "B"* to the Original Complaint.       The Leased Equipment thereafter remained in Defendant's possession and remains in Defendant's possession as of the date of the filing of this petition. All conditions precedent have been performed or have occurred.

5.       Defendant immediately defaulted with the rental payment which fell due on July 1, 2001 and has made no other payments to Plaintiff. Thereafter, Plaintiff exercised its option to accelerate the unpaid balance of the indebtedness due on the Equipment Lease.

6.       The Equipment Lease expressly provides that the Leased Equipment is and shall remain the property of the Plaintiff, and that Defendant has not required

- 2 -

any right, title or interest therein. Because of the Defendant's default, Plaintiff is entitled to the immediate possession of the Equipment. Defendant has failed and refused and still fails and refuses to deliver possession of the Leased Equipment to Plaintiff or to allow Plaintiff to take possession thereof, and Plaintiff is entitled to judgment for possession of the Leased Equipment.

7.    SWEEZY has refused to surrender possession of the Collateral when specifically requested to do so. Plaintiff demanded surrender and delivery of the equipment in writing on August 31, 2001. A copy of the demand letter is attached as *Exhibit "E"* to the Original Complaint. Plaintiff requests issuance of a Writ of Sequestration pursuant to Tex. R. Civ. Pro. 696 and Fed. R. Civ. Pro. 64.

8.    "The Collateral is exposed to risk of damage or loss through collision and wear and tear. The Collateral, like all equipment, depreciates in value over time, through use and whether used or not. The Defendant has no other nonexempt property, within the Plaintiff's knowledge, and if the Plaintiff cannot recover the Collateral, it will in all likelihood lose its debt. Furthermore, the Collateral will depreciate in value over time, while the Plaintiff's debt will only increase through the accrual of interest. At the present time the fair market value of the Collateral is less than the total amount of the indebtedness owed against it. Furthermore, the Collateral, like all equipment is mobile property and can easily be moved out of Cameron County by the Defendant. If the Defendant is permitted to retain possession of the Collateral during the pendency of this suit, there is a significant danger that it will be moved outside of Cameron County and outside of the State of Texas, so as to place it beyond the Plaintiff's reach.

Further affiant sayeth not.

_____
Michael Lindig

Title: _____ Credit Analyst _____

On this _9th_ day of November, 2001, before me, the undersigned Notary Public in and for said County and State, personally appeared Michael Lindig, to me personally known, who, being by me duly sworn, did say that he is the Credit Analyst of Sage Capital; that said instrument was signed on behalf of said corporation by authority of its Board of Directors; and that the said Michael Lindig as such officer, acknowledges the execution of said instrument to be the voluntary act and deed of said corporation, by it and by him voluntarily executed.

_____
Notary Public, State of Texas

My Commission Expires 11-29-03

AO 440 (Rev. 10/93) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

_____Southern_____    District of    _____Texas_____

SAGE CAPITAL CORPORATION

V.

SWEEZY CONSTRUCTION, INC, ,ET.,

**SUMMONS IN A CIVIL CASE**

CASE NUMBER: **B-01-191**

TO: (Name and address of Defendant)

PAULINE SWEEZY, 604 PARKVIEW CIRCLE,
HARLINGEN, TEXAS 78550

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

an answer to the complaint which is herewith served upon you, within _____20_____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

Michael N. Milby
_____        _____11-13-01_____
CLERK                                                           DATE

_____
(BY) DEPUTY CLERK

AO 440  (Rev. 10/93) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

Southern _____  District of _____  Texas

SAGE CAPITAL CORPORATION

V.

SWEEZY CONSTRUCTION, INC, ,ET. ,

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:  **B -01- 191**

TO: (Name and address of Defendant)

JUAN MAGALLANES AS REGISTERED AGENT FOR
SERVICE OF PROCESS FOR SWEEZY
CONSTRUCTION, INC. AT 1713 BOCA CHICA
BLVD., BROWNSVILLE, TEXAS 78551

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after service of this
summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a reasonable
period of time after service.

Michael N. Milby
_____

CLERK

(BY) DEPUTY CLERK

_____

11- 13 - 01

DATE

AO 440 (Rev. 10/93) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

Southern _____ District of _____ Texas

SAGE CAPITAL CORPORATION

V.

SWEEZY CONSTRUCTION, INC, ,ET. ,

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:   B -01- 191

TO: (Name and address of Defendant)

KENT M. SWEEZY, 604 PARKVIEW CIRCLE,
HARLINGEN, TEXAS 78550

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

an answer to the complaint which is herewith served upon you, within _____20_____ days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable
period of time after service.

Michael N. Milby
_____                    _____ 11 - 13 - 01 _____
CLERK                                                                              DATE

_____
(BY) DEPUTY CLERK